### Luten Bridge Company v. Grant County, et al.

(Decided January 9, 1925.)

#### Appeal from Grant Circuit Court.

1. Contracts—Court will Not Adopt More Oppressive Construction. —Where language of contract is capable of two constructions, court will not adopt the oppressive one.

2. Contracts—Separate Writings Construed Together.—Where contract is contained in separate papers, they will be read together to ascertain true agreement.

3. Contracts—Construed as Whole.—Contract must be construed as a whole.

4. Bridges—Contractor Held Entitled to Pay for Additional Excavation and Concrete Necessary to Set Foundation in Bedrock.— Under bridge contract providing for payment of certain excavation and concrete additional to that shown on plans according to

unit prices in proposal, contractor held entitled to payment for additional concrete and excavation necessitated by extending foundations below depth shown on plan, in order to set piers and abutments in solid rock, notwithstanding specifications required foundations to be set in bedrock.

C. C. ADAMS for appellant.

L. M. ACKMAN for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

The appellant appeals from a judgment of the Grant circuit court, sustaining a demurrer to its petition by which it sought to recover $1,243.00 against Grant county, Kentucky, and the Grant fiscal court for extra excavation and concrete performed and furnished by the appellant in constructing a concrete bridge across Fork Lick creek, on the Williamstown and Cynthiana turnpike. To determine the controversy, it is necessary to consider and construe the contract under which the work was executed by the appellant and on which it bases this action. This instrument is copied in the appellant's petition. It was drawn pursuant to a certain proposal containing plans and specifications submitted by the appellant bridge company to the appellees in response to their advertisement for bids, and it expressly states that the bridge should be constructed "in accordance with the plans and specifications attached hereto and forming a part of this contract."

The proposal, as submitted by appellant, was accepted by the appellees and woven into their contract. In clause 2 thereof appellant proposes to erect the bridge according to plans and specifications submitted, for the sum of $8,222.00. In clause 7 thereof these unit prices are stipulated for additions or deductions, to-wit:

| | |
|---|---|
| Class "A" Concrete | $24.00 per cu. yd. |
| Class "B" Concrete | 20.00 per cu. yd. |
| Reinforcing Steel | .05 per pound. |
| Dry Excavation | 1.00 per cu. yd. |
| Wet Excavation | 2.00 per cu. yd. |
| Rock Excavation | 5.00 per cu. yd. |

Paragraph 10 of the specifications reads as follows:

"ADDITIONAL EXCAVATION. Excavation and concrete additional to that shown on the plans if no base line is indicated or below the base line in case such base line is shown on the plans and marked 'Base Line' will be paid for according to unit prices in proposal."

The appellant claims to have fully performed its part of the contract in conformity to every requirement, and in addition thereto, at the instance of appellees, that it built the bridge to a height of one foot above the elevation indicated on the original plan, this additional height requiring 9.9 yards of extra class "A" concrete and 590 pounds of extra steel for reinforcement. It also extended the footing or foundations for the bridge below the depth shown on the original plan several feet, to set the piers and abutments six inches in the solid bed rock.

After completing the structure to the appellees' satisfaction, appellant presented to them for payment, its bill consisting of these items:

| | |
|---|---:|
| Contract price, contemplated under original plan | $8,222.00 |
| Extra Class A concrete on acct. of raising bridge, 9.9 yards | 237.60 |
| Extra Class B concrete, extending foundation into rock, 6 in. | 132.00 |
| Extra rock excavation, extending foundation 6.6 yds. | 33.00 |
| Extra Class B concrete in foundation below depth shown on original plan 49 yds. | 980.00 |
| Extra wet excavation below depth shown on original plan, 49 yds. | 98.00 |
| Extra steel required for raising bridge 1 ft. 590 pounds | 29.50 |
| Total | $9,732.10 |

After considering this bill, the appellees paid appellant $8,489.10 for the first, second and last of the foregoing items, covering the $8,222.00 as the lump contract price contemplated under the original plan and $237.60 for extra class A concrete, and $29.50 for extra steel used in raising the bridge one foot above the height shown on the original plan, but refused to pay appellant for the third, fourth, fifth and sixth items arising from the ex-

tensions of the foundations of the bridge below the depth shown on the original plan, aggregating $1,243.00, contending that they were relieved from paying those items under that part of the clause in the contract which reads: "That the piers and abutments must be set six inches in the solid bed rock."

The payment of a part of appellant's bill by the appellees, and the acceptance thereof by the appellant, was made without prejudice to the right of the parties to litigate the liability for the balance of the claim, which right was reserved in an order entered upon the appellees' records.

In sustaining appellees' demurrer to appellant's petition, the lower court approved of the appellees' contention as to the construction of the contract, holding that appellant was precluded from collecting anything for the extra items performed in extending the foundations of the bridge below the depth shown on the original plan by these words in the clause of the contract, to-wit: "That the piers and abutments must be set six inches in the solid rock."

The original plan, which was submitted by appellant with its proposal, is drawn to an accurate scale, and the scale noted thereon, the depth to which appellant was required to build the bridge for the lump sum of $8,222.00 is designated thereon by scale and by figures showing the exact distance from the finished roadway level of the bridge to the bottom of the foundations on the plan.

At the time the contract was made there was perhaps no exact knowledge as to the depth at which they would find the solid bed rock in this stream of water, but it was assumed to be at a certain depth, and the unit prices were included in the proposal and specifications to cover just such a contingency as arose in this instance, to-wit, the finding of solid bed rock in the stream at a lower distance or depth than had been anticipated when the plans were made. The parties could not have foreseen the exact depth to which appellant would have to go to find the solid bed rock at the time the contract was executed and the plans were drawn. The appellant's right to payment for the disputed portion of its claim is expressly covered by paragraph 10 of the specifications, copied above.

"Where the language employed in a contract is capable of two different constructions, the court will

not adopt the oppressive one." Elliott on Contracts, section 1, 521; Wallace v. Cook, 190 Ky. 262, 227 S. W. 279.

"It is well settled that where a contract is contained in two separate and distinct papers, they will be read together for the purpose of ascertaining the true contract." Sackett v. Maggard, 142 Ky. 500, 134 S. W. 888.

"It is not proper, in construing a contract, for a court to seize upon some expression in it and allow that to control, in disregard of other provisions of it. The whole of the contract should be read." Mitchell v. Southern Ry. Co., 124 Ky. 146, 74 S. W. 216, 24 Rep. 2388.

We are unable to find any conflict or inconsistency between the contract itself and the plans accompanying it. Evidently the parties contemplated it might become necessary to depart from the plans in some particulars. They provided for such a contingency by agreeing upon unit prices for the work and materials that might be required. The contingency came, the additional material was furnished, and the extra work done. Unless there is some dispute about the quality of the work, the quantities or the prices, the appellant should be paid.

The judgment is reversed and the cause remanded with directions to overrule the appellees' demurrer, and for further proceedings consistent herewith.